IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Douglas Anthony Pendergrass,<br><br>                Plaintiff,<br><br>vs.<br><br>Captain T.W. Brunson,<br><br>                Defendant. | Civil Action No. 6:11-1384-TMC-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

       The plaintiff, who is proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. The plaintiff was a federal detainee in the Florence County Detention Center ("FCDC") at the time he filed his complaint. He is now incarcerated in the Nash Correctional Institution in Nashville, North Carolina.

       Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

       On December 2, 2011, the defendant filed a motion for summary judgment. By order filed December 5, 2011, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his response in opposition on April 12, 2012.

## FACTS PRESENTED

       The plaintiff was a federal detainee at the FCDC at all times relevant to the issues in his complaint. He alleges that when he arrived at the FCDC, he had a "medically issued wooden walking cane because of debilitating joint disease in [his] right hip, and

additional pain and nerve damage resulting from gunshot wounds." According to the plaintiff, the FCDC officers took his cane when he was processed into the detention center on April 25, 2011, and he was issued a "metal and aluminum walker." The plaintiff claims the walker caused back pain, so he submitted several requests for the return of his cane. His cane was returned on May 18, 2011, but the plaintiff claims he was "forced" to go into protective custody/segregation with limited recreation and visitation. The plaintiff claims the protected custody was "retribution." He further claims that he submitted a grievance requesting the use of a wheelchair, which was approved by the medical staff, so that he could return to general population. He alleges that request was refused by defendant Captain Brunson, who is an employee of the Florence County Sheriff's Office. The plaintiff seeks to be returned to general population, to remain in his current cell, the use of his walking cane,[1] and punitive and compensatory damages (comp. at 3-5).

    According to the affidavit of defendant Captain Brunson, the plaintiff's cane was confiscated when he arrived at the FCDC because it created a safety and security concern as to the plaintiff, other inmates, and FCDC officials. Because of these concerns, inmates are not allowed to have objects, such as canes, that could be used as weapons when they are housed in the general population. Thus, the plaintiff was issued a walker and placed in the general population. Because of his continuous demands to have his cane returned to him, the plaintiff was informed that if he wanted to have his cane he would have to be placed in protective custody, as he could not be housed with other inmates. On May 17, 2011, after the plaintiff's repeated requests, the plaintiff was placed in protective custody and given his cane (Brunson aff. ¶¶ 3-4).

    With regard to the plaintiff's allegation that he requested a wheelchair from the medical unit, Nancy Truluck, who is a registered nurse at the FCDC, testified in her

---

[1] As the plaintiff is no longer detained at the FCDC, his prayers for injunctive relief are moot. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

affidavit that after the plaintiff made the request, he was issued a wheelchair, which was in his possession while being housed in protective custody. According to Nurse Truluck, it was her opinion that the plaintiff should remain in protective custody so that he could be closely monitored due to his "voluminous number of complaints concerning a variety of medical conditions." While the plaintiff claims he has suffered emotional trauma, stress, and physical pain resulting from the confiscation of his cane, Nurse Truluck stated in her affidavit that the plaintiff complained on numerous occasions of medical conditions that existed prior to his arrival at the FCDC, and it was her opinion that the plaintiff had not suffered any physical injury as a result of the confiscation of the cane (Truluck aff. ¶¶ 5-6).

As noted above, the plaintiff is no longer an inmate at the FCDC and is now incarcerated at the Nash Correctional Institution in Nashville, North Carolina.

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold

3

demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

### *Exhaustion of Remedies*

The defendant argues that the plaintiff has failed to exhaust his administrative remedies.  This court agrees.  Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

4

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted). Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id*. at 532. The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). An inmate's failure to "properly take each step within the administrative process ... bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.2002). Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes all steps of a prison's grievance procedure, and § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court. *See, e.g., Ayre v. Currie*, No. 05–3410-HMH-BM, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007); *Charles v. Ozmint*, No. 05–2187-DCN-RSC, 2006 WL 1341267, at *4 n.3 (D.S.C. May 15, 2006).

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint. *Jones*, 549 U.S. at 211–12; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir.2005). However, to survive a motion for summary judgment asserting he failed to exhaust, the inmate is required to produce evidence in response to the motion that refutes the claim that he failed to exhaust. *See Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir.2010) (unpublished opinion) (holding that "to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial" (citing Fed.R.Civ.P. 56(e)(2))); *see also Celotex*, 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the

non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue).

The defendant submitted the affidavit of Joey Norris, the Jail Manager for the FCDC. Mr. Norris testified in his affidavit that the FCDC has a grievance procedure in place to allow inmates to grieve to the administration any issues inmates have concerning the conditions of their confinement (Norris aff. ¶ 3). The grievance procedure first requires the inmate to fill out an inmate request form stating the grievance (*id.* ¶ 4). The grievance form is then taken to the appropriate person, determined by the allegation(s) in the grievance (*id.* ¶ 5). Upon receiving an initial findings response, the inmate can appeal the grievance to the Jail Manager (*id.* ¶ 6). Mr. Norris further testified that the plaintiff has filed several "Inmate Request Forms" in which he received responses from the appropriate parties; however, at no time did the plaintiff appeal the initial findings or response to the Jail Manager (*id.* ¶¶ 7-8).

In his response to the motion, the plaintiff makes the unsupported argument that he used the appropriate inmate request forms, and "[o]nce his grievance was denied by the defendant, the Plaintiff addressed additional grievances to Major Norris, which were in turn responded back to him by the defendant, Captain Brunson" (m.s.j. resp. at 8). The plaintiff has failed to provide any evidence that he appealed his grievances to the Jail Manager, and, therefore, he has failed to demonstrate a genuine issue of material fact as to whether he exhausted his administrative remedies.

***Conditions of Confinement***

The plaintiff's claims also fail on the merits. Claims related to conditions of confinement for pretrial detainees are analyzed pursuant to the Fourteenth Amendment utilizing the same analysis for claims brought pursuant to the Eighth Amendment. In order to establish cruel and unusual punishment under the Eighth Amendment, an inmate must establish that "the deprivation of [a] basic human need was objectively 'sufficiently serious,'

6

"and that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.'" *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir.1993) (citations omitted). The United States Supreme Court has determined that only extreme deprivations are sufficient to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. *Hudson v. McMillian*, 503 U.S. 1 (1992). In order to demonstrate such an extreme deprivation, a prisoner must allege "a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler*, 989 F.2d at 1381. In the alternative, the inmate must show a substantial risk of such serious harm resulting from his exposure to the challenged conditions. *See De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir.2003) (citations omitted).

It is well-settled that "[n]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Bell v. Wolfish*, 441 U.S. 520, 537 (1979). Consequently, "[a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538. It also has been determined that a transfer from one facility to another or from one housing unit to another typically does not implicate a liberty interest. A detainee does not have a protected interest in remaining in or being released into the general population. *Refitt v. Nixon*, 917 F.Supp. 409, 412 (E.D. Va.1996). Similarly, there is no constitutional right for a state prisoner or federal prisoner to be housed in a particular institution, at particular custody level, or in a particular portion or unit of a correctional institution. *See Olim v. Wakinekona*, 461 U.S. 238 (1983); *Ange v. Paderick*, 521 F.2d 1066 (4th Cir.1975); and *Lyons v. Clark*, 694 F.Supp. 184, 187 (E.D. Va.1988) (collecting cases).

The plaintiff's classification within FCDC is clearly discretionary. The plaintiff's transfer to FCDC and his subsequent classification and placement within the confines of FCDC are a result of his own request and are necessary because of security concerns.

7

The plaintiff came to FCDC with a cane to use for assistance due to his medical condition. Due to the security issues and concerns associated with the plaintiff having a cane in the general population, he was issued a walker as an alternative to the cane. The plaintiff continued to request that the cane be reissued as he was not satisfied with the walker. The plaintiff was informed that in order to have his cane, he would have to be placed in protective custody due to the safety and security concerns as to himself, other inmates, and FCDC officials.

Additionally, the plaintiff requested a wheelchair, which was given to him while he was in protective custody. Upon receipt of the wheelchair, the plaintiff continued to voice a variety of medical problems to the medical staff. Thus, it was determined that for his safety and because of his numerous medical issues, that he remain in protective custody to be closely monitored. All of the placements of the plaintiff within protective custody at FCDC were in accordance with legitimate governmental purposes and were well within the discretion of defendant Brunson. Therefore, the plaintiff has failed to establish an issue of material fact on this claim.

## *Eleventh Amendment Immunity*

The defendant contends that the plaintiff's § 1983 claim for money damages is barred to the extent that she is sued in her official capacity because she was acting in her official capacity as an employee of the Sheriff of Florence County at the time of the allegations complained by the plaintiff, and thus she is entitled to Eleventh Amendment Immunity. In *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir.1996), the Fourth Circuit held that South Carolina Sheriffs are State agents and are not amenable to suit in federal court by virtue of the Eleventh Amendment. Therefore, based on the above, it is recommended that the plaintiff's § 1983 claims be dismissed against the defendant in her official capacity.

***Americans with Disabilities Act***

In his response to the motion for summary judgment, the plaintiff alleges that his rights under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act were violated "because plaintiff's need for the assistance of an aid or device was clearly established by prison officials" (resp. m.s.j. at 3). While the plaintiff did not cite the ADA or Rehabilitation Act in his complaint, to the extent the district court finds he alleged such a claim, the claim fails.

Title II of the ADA and the Rehabilitation Act apply to inmates in state prisons. *Pa. Dept. of Corr. v. Yeskey*, 524 U.S. 206, 210-13 (1998). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Title II applies to any "public entity," while § 504 of the Rehabilitation Act applies only to federal agencies or to "any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). A plaintiff seeking relief under the ADA must present sufficient evidence to establish that 1) he has a disability, 2) he is otherwise qualified to receive the benefits of the public services, programs, or activities, and 3) he was denied the benefits of such services, programs, or activities, on the basis of his disability. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir.2005); *Baird v. Rose*, 192 F.3d 462, 468 (4th Cir.1999). A successful Rehabilitation Act claim requires a showing of discrimination "solely by reason of" disability. 29 U.S.C. § 794(a). *See Constantine*, 411 F.3d at 498 n.17. The Fourth Circuit has recognized "three distinct grounds for relief: (1) intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations." *A Helping Hand, LLC v. Baltimore County*, 515 F.3d 356, 362 (4th Cir. 2008).

9

In his response to the motion for summary judgment, the plaintiff alleges the defendant failed to make adequate accommodations for his disability (resp. m.s.j. at 6). The evidence shows that, because of safety concerns, inmates are not allowed to have objects, such as canes, that could be used as weapons when they are housed in the general population. Accordingly, the plaintiff was given a walker while he was in general population. When he continued to complain, his cane was returned, and he was placed in protective custody. Clearly, the FCDC made reasonable accommodations for the plaintiff in light of the safety concerns. Moreover, the plaintiff has failed to present any evidence that he was placed in protective custody in retaliation for his complaints. Any ADA claim or Rehabilitation Act claim is entirely without merit and should be dismissed.

*Qualified Immunity*

The defendant further argues that she is entitled to qualified immunity as her conduct did not violate any clearly established constitutional or statutory rights of which a reasonable person should have known. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendant's position would have known of it. *Id.* In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

The plaintiff has failed to show that the defendant violated any of his constitutional or statutory rights. Therefore, defendant Brunson is entitled to the protections afforded by the doctrine of qualified immunity.

*State Claims*

Having found that the defendant is entitled to summary judgment regarding the plaintiff's constitutional claims, it is recommended that the court decline to exercise supplemental jurisdiction over any claims for relief asserted pursuant to state law. *See* 28 U.S.C. § 1367(c)(3).

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the defendant's motion for summary judgment be granted (doc. 52).

IT IS SO RECOMMENDED.

July 16, 2012
Greenville, South Carolina

s/ Kevin F. McDonald
United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
300 East Washington St, Room 239
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984.